## ARNOLD v. WHITE-GRANDIN LUMBER CO.

### No. 999.

Court of Appeal of Louisiana. First Circuit.

June 30, 1932.

Thornton, Gist & Richey, of Alexandria, for appellant.

Woosley & Cavanaugh, of Leesville, for appellee.

LE BLANC, J.

Plaintiff alleges in his petition that on November 12, 1930, while engaged for the defendant lumber company in part of his work which consisted in assisting at firing the boilers of the saw mill at which he worked, he sustained a hernia on his left side. Without stating the exact manner in which it happened, he alleges that his injury occurred when he was attempting to put a large slab or piece of wood into one of the boilers. The petition does not inform us whether he was struck by the heavy slab, or whether the hernia developed from excessive straining or otherwise. His allegation as to the manner in which it happened is, however, put at issue by a simple denial on the part of the defendant. The only testimony on that important point is that of the plaintiff which will be referred to hereafter. Plaintiff alleges that he is totally disabled as a result of his injury, and he seeks to recover compensation for a period of four hundred weeks based on wages of $3.25 per day for a seven days' week. It might be stated here that the defendant averred in its answer that he only received a daily wage of $2.95, which the plaintiff admitted in his testimony was correct.

The defense is that plaintiff was not injured in the manner he claims, and that the hernia he is suffering with is one of long standing and not related in any way to his employment.

From a judgment dismissing his suit, plaintiff appeals.

Asked at the very beginning of his direct examination as a witness, to relate in what manner he was ruptured, the plaintiff answers:

"From being—putting heavy slabs in the furnace and straining, slipping on a pile of slabs.

"Q. Did you—would you mind just detailing a little more about just how you was putting that slab in there and how it happened? Just detail to the Court. A. Well, I was putting slabs in at the furnace door, which was about, I don't know, about 15 inches wide and 20 inches long, putting slabs in at this door, and that is where I received my injury.

"Q. Was that in a straining position or stooping position, when you were throwing it in there? A. Yes, sir. Yes, sir. It was not exactly in a stooping position, but it was in a straining position."

On cross-examination he is asked again to explain how he happened to have been hurt and he says:

"Well, I was carrying this heavy piece of timber, a slab, and I strained myself. I probably slipped, I believe I did, and strained myself."

The balance of his testimony is about of the same character, and, from his vague account of the accident, the most we can make of it is that he claims that the rupture was caused by straining. He was then on night duty, and approximates the time at which the accident took place as being between two and three o'clock in the morning. He says that it made him "kind-o' sick" and was very painful. Nevertheless, he continued with some of his other work which took him to other parts of the mill until six o'clock, when his relief came on the job. He walked to his home some 300 yards away, and waited until about eleven

o'clock, at which time he went to the doctor, who generally came to the mill about noon each day. He waited for some time, and, as the doctor did not show up, he drove to Leesville, in a car with some one he does not remember, to the doctor's office there. He worked two days after that, and was then let off because the mill had closed down.

It may be pertinent to remark at this time, while commenting on the testimony of the plaintiff, that, although he alleges in his petition that as a result of the accident he suffered a hernia on the left side, when asked on cross-examination to point to the exact spot on which it is, he says that it was on both sides, "both right and left."

It is established that the plaintiff made no report of his injury to any one connected with the defendant company. He mentioned to a fellow employee named Henry Cooley, during the night, that he had hurt himself, but this witness's account, on the witness stand, of what plaintiff told him, does not coincide with a signed statement given by him while the claim was being investigated. It is urged that, by reporting to Dr. Branch, who was the company's physician, plaintiff did all that could be expected of him in the way of reporting the accident. But it is very doubtful that he did report to Dr. Branch at all until he was referred to him by an attorney whom he had consulted about recovering compensation. Dr. Branch has no recollection of having seen him before and feels positive that he would have made a record of the case if he had. Dr. Willis, who occupied the same offices with Dr. Branch, and who says that he examined plaintiff on or about November 12, 1930, at the time he called to see Dr. Branch, testified that he called Dr. Branch in to see the case, and the latter agreed with him that plaintiff was suffering with a hernia. Dr. Branch does not agree to this however, and is rather positive in his views regarding the time he first saw the plaintiff. Dr. Willis says that he had been consulted by plaintiff some months before for some other trouble which necessitated an examination of his lower abdomen, and that he found no hernia or opening for a hernia. On the other hand, Dr. A. E. Douglass testifies that in 1927 plaintiff consulted him about a hernia and asked him if he would not see about getting him a truss. It was a hernia on the left side.

The doctor has a recollection of having ordered the truss, but does not know whether plaintiff ever used it or not. He examined plaintiff on the day the case was tried and found that the hernia looked to be the same size as it was in 1927. Dr. Brown Word, who also testified in the case, and Dr. Douglass both give it as their opinion that the plaintiff could not have continued performing his duties immediately following the accident and for two days thereafter if he had been injured in the manner he claims.

Reverting now to the testimony of Henry Cooley, plaintiff's only witness besides Dr. Willis, we find that it is greatly affected by the written statement he gave to the claim adjuster who was investigating the case shortly after demand had been made for compensation. His statement, in which he reports what the plaintiff told him, casts a serious doubt over the testimony of the plaintiff also. In it he says that about a week or ten days before he left defendant's employ, which was on November 14, 1930, Monroe Arnold, the plaintiff, told him one night, that he had an old rupture and that he had hurt it again "when he had started to put a slab in the fire box and it punched him in his side." He says that plaintiff showed him the rupture, and that it looked to be a little bigger than a bird egg. Cooley on the witness stand denies that he made the statement as written, but the testimony of the two attesting witnesses is convincing that he did. It appears that Cooley himself had had a suit over compensation with the defendant, and also that he was instrumental in procuring the services of an attorney either at Port Arthur or Beaumont, Tex., to make demand in behalf of the plaintiff. We are of the opinion that Cooley's statement reflects the truth of the entire situation as corroborated to a large extent by Dr. Douglass' testimony, and that the present condition of the plaintiff is due to an old hernia which is in no way related to his employment by the defendant.

The facts in the case of Dixon v. Eula Lumber Co., 6 La. App. 206, were far more favorable to the plaintiff there than are those to plaintiff in this case, and it cannot serve as authority here.

There has been no manifest error pointed out in the judgment of the lower court, and it is therefore affirmed.